UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

UNITED STATES OF AMERICA,

v.

JUAN ARIAS NATANIEL,

                 Defendant-Petitioner.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
15-CR-588 (MKB)
17-CV-7605 (MKB)

MARGO K. BRODIE, United States District Judge:

    On November 23, 2016, Defendant-Petitioner Juan Arias Nataniel pleaded guilty to one count of importation of cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(3). (Minute Entry dated Nov. 23, 2016, Docket Entry No. 19.) On May 24, 2017, the Court sentenced Petitioner to time served and three years of supervised release. (Minute Entry dated May 24, 2017.) Currently before the Court is Petitioner's motion to vacate his conviction pursuant to 28 U.S.C. § 2255. (Pet'r Mot. to Vacate ("Pet."), Docket Entry No. 28.) The Government opposes the motion. (Gov't Opp'n to Pet. ("Gov't Opp'n"), Docket Entry No. 35.) For the reasons discussed below, the Court denies the petition.

**I. Background**

    On October 19, 2015, Petitioner arrived at John F. Kennedy International Airport on a flight from Santo Domingo, Dominican Republic, in possession of two checked pieces of luggage and one carry-on bag. (Presentence Investigation Report ("PSR") ¶¶ 3–4, Docket Entry No. 21.) As part of a routine border enforcement inspection, Customs and Border Protection ("CBP") officers conducted an x-ray examination of Petitioner's luggage and observed an anomaly inside of what appeared to be food items in his bags. (*Id.* ¶ 4.) CBP officers asked Petitioner whether the bags were his, and he replied that they were. (*Id.*)

The CBP officers escorted Petitioner with his luggage to a private search room. (*Id.* ¶ 5.) The CBP officer conducting the search identified packaged sweets in one of Petitioner's bags. (*Id.*) A search of the sweets revealed a white powdery substance that field tested positive for the presence of cocaine. (*Id.*) According to a Drug Enforcement Administration laboratory report, a total of 3956.7 grams of cocaine were recovered from Petitioner's luggage. (*Id.* ¶ 6.)

### a. Petitioner's plea

On November 23, 2016, Petitioner pleaded guilty before Magistrate Judge Peggy Kuo to count one of the Indictment charging him with importation of a controlled substance containing cocaine in violation of 21 U.S.C. § 952(a).[1] (Minute Entry dated Nov. 23, 2016; Plea Hr'g Tr. 24:10–31:23, annexed to Pet. as Ex. E.) Paragraph four of Petitioner's plea agreement provides in pertinent part:

> The defendant understands that he may be subject to removal as set forth in paragraph [six] below. Nevertheless, the defendant affirms that he wants to plead guilty and to waive his right to appeal as set forth at the beginning of this paragraph, even if the consequence is the defendant's automatic removal from the United States.

(Plea Agreement ¶ 4, annexed to Gov't Opp'n as Ex. A.) The plea agreement also states in paragraph six:

> The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. Indeed, because the defendant is pleading guilty to a violation of 21 U.S.C. § 952(a), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the District Court, can predict with certainty

---

[1] Prior to pleading guilty, Petitioner moved to suppress his statements to CBP officers, arguing that they were obtained in violation of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). After a hearing, the Court denied Petitioner's motion finding that he knowingly and voluntarily waived his *Miranda* rights. (Minute Order dated Sept. 27, 2016.)

> the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the defendant's plea may entail, even if the consequence is the defendant's automatic removal from the United States.

(*Id.* ¶ 6.) During the plea hearing, Judge Kuo asked Petitioner, *inter alia*, whether he was of sound mind, (Plea Hr'g Tr. 4:20–22), whether he was entering the plea voluntarily, (Plea Hr'g Tr. 24:14–16), whether he had any issues communicating with his attorney, (Plea Hr'g Tr. 3:20–22), whether he was satisfied with the representation he had received, (Plea Hr'g Tr. 7:7–9), and whether his attorney explained the contents of his plea agreement to him, (Plea Hr'g Tr. 11:18–20). Judge Kuo also discussed with Petitioner the possibility that his guilty plea could result in his removal from the United States:

> THE COURT: All right. So, Mr. Arias, since you are not a citizen, I need to tell you about some potential consequences of your guilty plea. As stated in paragraph [six] of the plea agreement, by pleading guilty another consequence may be that you are deported from this country and will be forbidden from reentering the United States without permission of the Attorney General or some other authority. Removal and other immigration consequences will be the subject of a separate proceeding. Do you understand that there may be immigration consequences to your guilty plea today?
>
> THE DEFENDANT: Yes, I understand.
>
> THE COURT: Do you understand that no one including your attorney or the Court can predict with certainty the effect of your conviction in this case on your immigration status[?]
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you still wish to plead guilty regardless of any immigration consequences that may result from your plea, even if those consequences include your automatic removal from the United States?
>
> THE DEFENDANT: It's sad but I acknowledge it.
>
> THE COURT: All right. So you understand.

3

THE DEFENDANT: Yes, I understand.

(Plea Hr'g Tr. 15:8–16:7.)

### b. Petitioner's sentencing

The Court sentenced Petitioner on May 24, 2017. (Minute Entry dated May 24, 2017.) At the Court's request, Petitioner allocuted to additional facts supporting his guilty plea. (Sentencing Hr'g Tr. 2:14–7:3, annexed to Gov't Opp'n as Ex. B.) The Court thereafter accepted Petitioner's plea and sentenced Petitioner to time served with three years of supervised release. (Sentencing Hr'g Tr. 7:4–11; 18:9–20; Judgment, Docket Entry No. 26.) Petitioner did not pursue a direct appeal of his conviction or sentence.

### c. Petitioner's motion to vacate

Petitioner, proceeding *pro se*,[2] filed the instant motion on November 27, 2017, seeking to vacate his conviction pursuant to section 2255.[3] Petitioner asserts that he was denied effective assistance of counsel, arguing that his attorney should have "repeated to him . . . his [i]mmigration consequences," (*id.* at 5, ¶ 12), and "failed to negotiate an [i]mmigration-safer plea," (*id.* at 8, ¶ 2). Petitioner further argues that had he known his attorney could have negotiated such a plea, he would not have pleaded guilty to 21 U.S.C. § 952(a), and would instead have gone to trial on the charges against him. (*Id.* at 1–2, ¶ 1.)

---

[2] Petition's memorandum of law is styled as an affidavit in support of his motion and contains different sections with non-consecutive paragraph numbering. For ease of reference, the Court's citations refer to both the page number and paragraph number.

[3] Petitioner's motion was initially filed as a motion to vacate pursuant to New York Criminal Procedure Law § 440.10(1)(h). With Petitioner's consent, the Court recharacterized his motion as a habeas petition under 28 U.S.C. § 2255. (*See* Order dated Dec. 27, 2017, Docket Entry No. 29; Pet'r Notice of Consent to Recharacterize the Mot. to Vacate as a Habeas Petition, Docket Entry No. 31.)

## II. Discussion

### a. Standard of review

Under 28 U.S.C. § 2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner in custody pursuant to a sentence imposed by a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" if the "sentence was imposed in violation of the Constitution or laws of the United States . . . or was in excess of the maximum authorized by law or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Gonzalez v. United States*, 792 F.3d 232, 238 (2d Cir. 2015) ("[A]ll challenges to a [federal] conviction and sentence can [] be brought in a [] [section] 2255 motion . . . ."); *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004) ("[Section] 2255 is the appropriate vehicle for a federal prisoner to challenge the imposition of his sentence." (citing *Chambers v. United States*, 106 F.3d 472, 474 (2d Cir. 1997))). While section 2255(a) refers to a petitioner's motion to "vacate, set aside or correct" a criminal sentence, this provision is understood to permit challenges to both a petitioner's sentence and conviction. *See Johnson v. United States*, 623 F.3d 41, 45 (2d Cir. 2010) ("As a practical matter, courts routinely allow federal prisoners to challenge their conviction, in addition to their sentence, under [section] 2255(a). For that purpose, the word 'sentence' in [section] 2255(a) is understood to encompass both the conviction and the sentence.").

In order to prevail on a section 2255 petition, a petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)). "A motion under [section] 2255 is not a substitute for an appeal." *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998) (quoting *United States v. Munoz*, 143 F.3d

632, 637 (2d Cir. 1998)). Accordingly, "[w]here a criminal defendant has procedurally forfeited his claim by failing to raise it on direct review, the claim may be raised in a [section] 2255 motion only if the defendant can demonstrate either: (1) 'cause for failing to raise the issue, and prejudice resulting therefrom,'; or (2) 'actual innocence.'" *Id.* (internal citation omitted) (first quoting *Douglas v. United States*, 13 F.3d 43, 46 (2d Cir. 1993); and then quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)); *see also Tucker v. United States*, No. 11-CV-6469, 2012 WL 4354806, at *5 (S.D.N.Y. Sept. 24, 2012). However, this rule is inapplicable to Sixth Amendment claims for ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (holding that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under [section] 2255, whether or not the petitioner could have raised the claim on direct appeal").

"In ruling on a motion under [section] 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez v. United States*, 722 F.3d 118, 130–31 (2d Cir. 2013) (first quoting 28 U.S.C. § 2255; and then citing *Pham v. United States*, 317 F.3d 178, 185 (2d Cir. 2003)). "The procedure for determining whether a hearing is necessary is in part analogous to a summary judgment proceeding . . . . If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made." *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011) (alterations omitted). The Second Circuit has noted, however, that a hearing is not required if a petitioner's allegations are "vague, conclusory, or palpably incredible." *Gonzalez*, 722 F.3d at 130–31 (first citing *Machibroda v. United States*, 368 U.S. 487, 494 (1962)); and then citing *United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987)); *see also Lake v. United States*, 465 F. App'x 33, 35 (2d Cir. 2012) ("[A] hearing is not required when, 'viewing the evidentiary proffers and record in the light most favorable to the petitioner,'

6

it is clear that the petitioner has failed to establish a 'plausible claim of ineffective assistance of counsel." (alteration omitted) (quoting *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009))); *Yushuvayev v. United States*, 532 F. Supp. 2d 455, 471 (E.D.N.Y. 2008) ("Section 2255 states that 'unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.'" (alteration omitted)).

"In determining whether the assertions in a [section] 2255 motion warrant discovery or a hearing, the court must also take into account admissions made by the defendant at his plea hearing, for 'solemn declarations in open court carry a strong presumption of verity.'" *Gonzalez*, 722 F.3d at 130–31 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). "Subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id*.

### b. Ineffective assistance of counsel claim

Petitioner claims his constitutional right to effective assistance of counsel was denied because his attorney should have "repeated to him . . . his [i]mmigration consequences." (Pet. 5, ¶ 12.) The Court construes Petitioner's allegation as asserting that he was not made aware of the immigration consequences of his guilty plea. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) ("We liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." (alteration and internal quotation marks omitted) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007))). Petitioner further asserts that his attorney failed to negotiate "an immigration-safer plea" — which the Court construes as an agreement to plead guilty to an offense with less unfavorable immigration consequences — and failed to seek a judicial

7

recommendation against deportation. (Pet. 8, ¶ 2.) Petitioner argues that had he known his attorney could have negotiated such a plea, he would have rejected the plea offer and insisted on going to trial.[4] (Pet. 1–2, ¶ 1.)

The government asserts that the Court should deny the petition without a hearing because Petitioner received effective assistance of counsel, and even assuming he did not, he has failed to show that he suffered any prejudice. (Gov't Opp'n 5–7.)

"[T]he two-part *Strickland v. Washington*, [466 U.S. 668 (1984),] test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Under *Strickland*, "legal representation violates the Sixth Amendment if it falls 'below an objective standard of reasonableness' as indicated by 'prevailing professional norms,' and the defendant suffers prejudice as a result." *Chaidez v. United States*, 568 U.S. 342, 348 (2013) (quoting *Strickland*, 466 U.S. at 687–88); *see also Premo v. Moore*, 562 U.S. 115, 121 (2011). "To establish ineffective assistance of counsel a defendant must show both deficient performance by counsel and prejudice." *Id.* (internal quotation marks omitted).

With regard to *Strickland's* first prong — counsel's performance, the Supreme Court has recognized that an attorney's failure to inform a defendant that a guilty plea carries a risk of deportation may constitute ineffective assistance of counsel. *Padilla v. Kentucky*, 559 U.S. 356, 374 (2010). This is so because "[t]he severity of deportation — 'the equivalent of banishment or exile,' — only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." *Id.* (internal citation omitted) (quoting *Delgadillo v. Carmichael*, 332 U.S. 388, 390–391 (1947)). The Supreme Court has advised that:

---

[4] Petitioner includes a "Fourteenth Amendment Violation" header in the petition, and references the equal protection clause in the paragraph following the header. (Pet. 11, ¶ 1.) However, Petitioner does not argue that his equal protection rights were violated and instead repeats the substance of his Sixth Amendment ineffective assistance of counsel claim. (*Id.*)

8

> When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear.

*Id.* at 369. Applying this principle, the Second Circuit has held that "where the law clearly dictates that removal is presumptively mandatory, a defense attorney's failure to advise his client of that fact falls below an objective standard of reasonableness." *United States v. Al Halabi*, 633 F. App'x 801, 803 (2d Cir. 2015) (citing *Padilla*, 559 U.S. at 369)); *see also Rodriguez v. New York*, No. 16-CV-5615, 2017 WL 1655217, at *9 (E.D.N.Y. May 2, 2017) (collecting cases).

"Recognizing the 'tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence,' the Supreme Court established that counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (alteration in original) (quoting *Strickland*, 466 U.S. at 689, 690); *see also Bierenbaum v. Graham*, 607 F.3d 36, 50–51 (2d Cir. 2010) (stating that the *Strickland* standard is "highly deferential" to eliminate the "distorting effects of hindsight"). Thus, on habeas review, "the question is not whether counsel's actions were reasonable . . . [but] whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "Surmounting *Strickland*'s high bar is never an easy task." *Id.* (citing *Padilla*, 559 U.S. at 371).

With respect to the second prong of the *Strickland* test — whether a defendant was prejudiced — a petitioner facing deportation as a result of a guilty plea can demonstrate prejudice by establishing a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, --- U.S. ---, 137 S. Ct. 1958, 1965 (2017) (quoting *Hill*, 474 U.S. at 59). "The Supreme Court has recently

9

instructed that judges should look to 'contemporaneous evidence to substantiate a defendant's expressed preferences' when a defendant alleges that he would not have pleaded guilty but for an attorney's deficient advice on immigration consequences." *Rodriguez v. United States*, 730 F. App'x 39, 43 (2d Cir. 2018) (quoting *Lee*, 137 S. Ct. at 1967); *see also id.*, examining *Lee* and noting that:

> In *Lee*, the Court particularly emphasized that the defendant had 'strong connections to the United States' — Lee had lived in the United States for nearly three decades, had established two businesses, and was the only family member in the United States who could care for his elderly parents. Under the circumstances, this left 'no reason to doubt the paramount importance [the defendant] placed on avoiding deportation.

(citations omitted)). To show prejudice, a petitioner must demonstrate that he "placed particular emphasis on immigration consequences in deciding whether or not to plead guilty." *Rodriguez*, 730 F. App'x at 43 (quoting *Kovacs v. United States*, 744 F.3d 44, 52 (2d Cir. 2014)); *United States v. Seepersad*, 674 F. App'x 69, 70 (2d Cir.), *cert. denied*, 138 S. Ct. 554 (2017) ("Where, as here, counsel's alleged errors relate to immigration issues, the petitioner . . . must 'clearly demonstrate that he placed particular emphasis on immigration consequences in deciding whether or not to plead guilty.'").

In addition to the Supreme Court's guidance that a criminal defendant who pleads guilty may demonstrate prejudice by showing a reasonable probability that he would have rejected the plea and gone to trial, the Second Circuit has held that a petitioner can satisfy the prejudice prong of the *Strickland* test by showing that "there was a reasonable probability that the petitioner could have negotiated a plea that did not impact immigration status or that he would have litigated an available defense." *Kovacs*, 744 F.3d at 52; *see also Rodriguez*, 730 F. App'x at 43. "When a petitioner claims that he would have pursued an affirmative defense but for his lawyer's erroneous advice, 'the resolution of the 'prejudice' inquiry will depend largely on whether the

affirmative defense likely would have succeeded at trial.'" *Kovacs*, 744 F.3d at 53 (quoting *Hill*, 474 U.S. at 59)).

### i. Counsel rendered adequate service

Petitioner has not demonstrated that counsel rendered inadequate service, because his argument that he was not made aware of the immigration consequences of his guilty plea is contradicted by the record.[5]

First, Petitioner's plea agreement explicitly states that he "understands that he may be subject to removal," (Plea Agreement ¶ 4), and that removal is "presumptively mandatory," but that he "nevertheless affirms that [he] wants to plead guilty regardless of any immigration consequences . . . even if the consequence is [his] automatic removal from the United States," (*id.* ¶ 6). At the plea hearing, Judge Kuo asked Petitioner whether his attorney had explained the contents of the plea agreement with him, and Petitioner responded in the affirmative. (Plea Hr'g Tr. 11:18–20.) The above provisions of the plea agreement and Petitioner's acknowledgment that he reviewed the agreement preclude any argument that he was uninformed or misinformed about the immigration consequences of his guilty plea. *See United States v. Papadakos*, 729 F. App'x 41, 46 (2d Cir. 2018), *cert. denied sub nom. Zografidis v. United States*, --- U.S. ---, 139 S. Ct. 166 (2018) ("[The petitioner's] plea agreement informed him that deportation was 'presumptively mandatory,' and [the petitioner] confirmed in open court that he had read the plea agreement and reviewed it with his attorney.").

In addition, Judge Kuo separately advised Petitioner at his plea hearing that there could be immigration consequences for his guilty plea. (Plea Hr'g Tr. 15:18–19.) Petitioner indicated

---

[5] Petitioner further asserts that in pleading guilty, he relied on counsel's advice and "the Court's express misrepresentation." (Pet. 7–8, ¶ 1.) However, as discussed *infra*, any suggestion that counsel, or the Court, failed to advise Petitioner of the immigration consequences of his guilty plea is belied by the record.

11

that he understood and wished to plead guilty, even if the consequence of such a plea was his "automatic removal from the United States." (Plea Hr'g Tr. 15:20 –16:7.) Such statements weigh heavily against any claim that Petitioner did not understand the deportation consequences of his guilty plea. *See United States v. Grzybek*, 283 F. App'x 843, 845 (2d Cir. 2008) ("It is well established that 'a criminal defendant's self-inculpatory statements made under oath at this plea allocution carry a strong presumption of verity . . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict them.'" (alteration omitted) (quoting *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999))); *see also Ottenwarde v. United States*, No. 12-CV-6537, 2013 WL 1242632, at *6 (S.D.N.Y. Mar. 28, 2013) ("A defendant cannot disavow his sworn statements made at his plea allocution by making conclusory allegations in the course of a subsequent challenge to the conviction or sentence." (first citing *Blackledge*, 431 U.S. at 74; and then citing *United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir. 1992))); *Gervais v. United States*, No. 08-CV-22, 2008 WL 1994944, at *5 (E.D.N.Y. May 5, 2008) ("The record is abundantly clear that [the petitioner] was informed by counsel and the court during the plea allocution and sentencing that he will be deported from the United States because of his guilty plea . . . [and therefore petitioner's ] . . . ineffective assistance of counsel claim lacks merit.").

In light of the foregoing, and in the absence of any evidence suggesting that Petitioner was not adequately informed of the immigration consequences of his guilty plea, Petitioner has not satisfied the first prong of the *Strickland* test.

### ii. Petitioner has not demonstrated prejudice

Although the Court concludes that Petitioner has failed to show that counsel's performance fell below *Strickland*'s "objective standard of reasonableness," *Chaidez*, 568 U.S. at 348 (quoting *Strickland*, 466 U.S. at 687–88), the Court nevertheless addresses whether

Petitioner has established prejudice, *see Grant v. United States*, 725 F. App'x 76, 77 (2d Cir. 2018) ("A court need not address both prongs of the *Strickland* test; if either fails, the entire claim fails." (citing *Strickland*, 466 U.S. at 697). As discussed below, Petitioner has not demonstrated prejudice.

First, while Petitioner faults his attorney for failing to negotiate a plea with more favorable immigration terms, Petitioner has not demonstrated "a reasonable probability that [he] could have negotiated a plea that did not impact immigration status . . . ."[6] *Kovacs*, 744 F.3d at 52. Petitioner cannot meet his burden by resting entirely on bare assertions, without any supporting evidence in the record. *See Sharifi-Nelson v. United States*, No. 07-CR-326, 2017 WL 3172863, at *3 (S.D.N.Y. July 21, 2017) (finding that the petitioner failed to demonstrate prejudice where there was "no evidence . . . that the Government would have offered a plea bargain that did not involve deportation"); *Ottenwarde*, 2013 WL 1242632, at *7 ("There is no evidence to suggest that the Government would have entered into a plea agreement that would have spared [petitioner] from adverse immigration consequences."); *Cuevas v. United States*, No. 10-CV-5959, 2012 WL 3525425, at *7 (S.D.N.Y. Aug. 16, 2012), *report and recommendation adopted*, No. 10-CV-5959, 2013 WL 655082 (S.D.N.Y. Feb. 22, 2013) (concluding that the petitioner "offered no evidence to suggest that the Government was amenable to [the petitioner's] pleading guilty to anything other than the full indictment" and finding the argument unpersuasive because it "rests only on speculation").

---

[6] Petitioner does not allege prejudice on the basis that — but for his counsel's purported errors — he would have litigated an available defense. *See Kovacs v. United States*, 744 F.3d 44, 52 (2d Cir. 2014). Nor could Petitioner have done so. Petitioner was arrested at the airport with luggage containing cocaine. Although Petitioner claimed that he did not know that the luggage contained drugs, in response to the Court's questions he confirmed that in exchange for an interest free loan of $8000, he agreed to bring a bag to the cousin of the person loaning him the money, and understood that the bag "contained something illegal" and he was suspicious that it was "illegal drug." (*See generally* Sentencing Hr'g Tr.)

Petitioner's assertion that his attorney rendered ineffective assistance by failing to seek from the Court a "judicial recommendation against deportation" is similarly without merit, as Congress repealed the statutory provision authorizing such recommendations long before Petitioner was sentenced. *See Couto*, 311 F.3d at 189 ("[A]s part of the Immigration Act of 1990, Pub. L. No. 101–649, § 505, 104 Stat. 4978, 5050 (1990), Congress amended former 8 U.S.C. § 1251(b), to eliminate the 'safety valve' of the [Judicial Recommendation Against Deportation]."); *Ljuljdjurdaj v. People of the State of New York*, No. 06-CV-90, 2009 WL 212083, at *7 (N.D.N.Y. Jan. 29, 2009) ("Since [petitioner] was sentenced in 2003, at a time when the sentencing court was powerless to make a judicial recommendation against deportation, petitioner's claim that his trial counsel was ineffective because he failed to request a JRAD [judicial recommendation against deportation] from the sentencing court is patently frivolous."); *Cisse v. United States*, 330 F. Supp. 2d 336, 343 (S.D.N.Y. 2004) ("There was no error by counsel . . . because Congress eliminated the JRAD in the Immigration Act of 1990, well before Cisse's indictment in 2000." (citing *Couto*, 311 F.3d at 189)).

Second, although Petitioner asserts that had he been aware his attorney could have negotiated an "immigration safer plea," he would not have pleaded guilty and instead would have insisted on going to trial, the record lacks any "contemporaneous evidence substantiat[ing] [this] expressed preference[][.]" *Rodriguez*, 730 F. App'x at 43 (quoting *Lee*, 137 S. Ct. at 1967); *see also Superville v. United States*, 284 F. Supp. 3d 364, 373 (E.D.N.Y. 2018) ("A lack of contemporaneous evidence showing that the defendant would have rejected a plea if he misunderstood the immigration consequences of it is grounds for denying a motion under the *Strickland* prejudice prong." (citing *Seepersad*, 674 F. App'x at 71)). During his plea hearing, Petitioner repeatedly reaffirmed his intent to plead guilty when Judge Kuo informed him of the immigration consequences of such a plea. Furthermore, there is no indication that

14

Petitioner "placed particular emphasis" — or any emphasis at all — "on immigration consequences in deciding whether or not to plead guilty." *Rodriguez*, 730 F. App'x at 43 (quoting *Kovacs*, 744 F.3d 44 at 52); *see also Francis v. United States*, No. 12-CV-01362, 2013 WL 673868, at *4 (S.D.N.Y. Feb. 25, 2013) ("In determining whether a petitioner has made the requisite showing, 'conclusory allegations that a petitioner would have insisted on proceeding to trial are generally insufficient to establish actual prejudice under *Strickland*.'" (alterations omitted) (first quoting *Scott v. Superintendent*, No. 03-CV-06383, 2006 WL 3095760, at *9 (E.D.N.Y. Oct. 31, 2006); and then citing *United States v. Arteca*, 411 F.3d 315, 322 (2d Cir. 2005); and then citing *Silent v. Perlmann*, No. 07-CV-04524, 2008 WL 5113418, at *13 (E.D.N.Y. Nov. 25, 2008))); *Calderon v. United States*, 953 F. Supp. 2d 379, 385 (E.D.N.Y. 2013) ("[The petitioner] fails to provide any evidence that 'but for' [counsel's] advice, he would have proceeded to trial, other than his own self-serving statements, which are insufficient." (citing *Scott*, 2006 WL 3095760, at *9)); *Zhang v. United States*, 543 F. Supp. 2d 175, 185 (E.D.N.Y. 2008) ("Even if [plaintiff] had been informed that a conviction for an aggravated felony would result in mandatory deportation, there is no evidence that he would have chosen to proceed to trial.").[7]

---

[7] Petitioner further asserts that his attorney "did not say anything to support or to ma[k]e the court consider[] the time and strong ties that the [P]etitioner had with the United States." (Pet. 7, ¶ 1.) Petitioner is incorrect. As the sentencing record shows, Petitioner's counsel advocated in writing and orally that Petitioner "lived in the United States for [thirty years], raised his son and step-children to adulthood" in the United States, and although he is a "legal permanent resident and has resided, along with the rest of his family, in the United States for decades, the law demands that he be deported because of his conviction." (*See* Defense counsel letter dated May 12, 2017, Docket Entry No. 23; Sentencing Hr'g Tr. 13:7–15:12.) However, even assuming the truth of this allegation, it does not support a claim for ineffective assistance of counsel. As set forth in the plea agreement which Petitioner stated he understood, and as advised by Judge Kuo at his plea hearing, the immigration consequences stemming from his guilty plea are not part of the sentence he received from the Court, but are the subject of a separate proceeding. (*See* Plea Agreement ¶ 6; Plea Hr'g Tr. 15:16–17.)

### c. An evidentiary hearing on the petition is not warranted

Taking into account the admissions made by Petitioner at his plea hearing, *see Gonzalez*, 722 F.3d at 130–31, Petitioner's conclusory allegations do not plausibly support either prong of the *Strickland* test, *see Lake*, 465 F. App'x at 35, nor do they create a material issue of disputed fact, the resolution of which warrants a hearing. *See Raysor*, 647 F.3d at 494; *see also Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009) ("[A] district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." (collecting cases)).

Based on the foregoing, the Court finds that Petitioner has not plausibly alleged the denial of his right to effective assistance of counsel, and a hearing is therefore not warranted.

### III. Conclusion

For the foregoing reasons, the Court denies the petition.

Dated: February 13, 2019
Brooklyn, New York

SO ORDERED:

\_\_\_\_\_s/ MKB_____
MARGO K. BRODIE
United States District Judge